UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

ROBERT D'ONOFRIO,

                Plaintiff,

     -against-

CITY OF NEW YORK; NEW YORK CITY
POLICE DEPARTMENT; LT. PATRICIA
FEELY, *both in her individual and official
capacity*; STEAMFITTERS' UNION LOCAL
638; JOHN TORPEY, *President of Local 638,
both in his individual and official capacity*;
ROBERT BARTELS, *Business Agent 638, both
in his individual and official capacity*;
CHARLES KRASS, *Business Agent 638, both
in his individual and official capacity*; THOMAS
INCANTALUPO, *Shop Steward 638, both
in his individual and official capacity*; NYC
OFFICE OF LABOR RELATIONS;

                Defendants.

-----------------------------------------------------------X

ROBERT D'ONOFRIO,

                Plaintiff,

     -against-

STEAMFITTERS' UNION LOCAL 638,

                Defendant.

-----------------------------------------------------------X

**07 CV 0731 (CBA)(LB)**

**09 CV 3970 (CBA)(LB)**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 14 2010
P.M.
TIME A.M.

1



# REPORT AND RECOMMENDATION

**BLOOM, United States Magistrate Judge:**

Plaintiff, Robert D'Onofrio, an employee of the City of New York and a member of Steamfitters Local 638, brings these two *pro se* actions under 42 U.S.C. § 1983 and the National Labor Relations Act (NLRA). Plaintiff alleges that defendants denied him due process of law under the Fourteenth Amendment and maliciously abused the disciplinary adjudication process. Plaintiff also alleges that the New York Police Department and Lieutenant Feeley of the Office of Labor Relations conspired with the officers and agents of Steamfitters Local 638 to deny plaintiff his due process rights and that Steamfitters Local 638 breached its duty of fair representation. Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Honorable Carol B. Amon referred defendants' motions to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b).[1] For the following reasons, it is respectfully recommended that defendants' motions for summary judgment in 07 CV 0731 should be granted. The Court should not reach defendant's motion for summary judgment in 09 CV 3970 and the case should be remanded to state court as the Court lacks subject matter jurisdiction.

## BACKGROUND

Plaintiff was employed by the New York City Police Department ("NYPD") as a steamfitter[2]

---

[1] While plaintiff's civil action under docket number 07 CV 0731 was pending, plaintiff filed a small claims action in Civil Court of the City of New York, Kings County, that was removed to this Court. The removal action was assigned docket number 09 CV 3970. Defendants in both cases have moved for summary judgment, and both motions are referred to me for Report and Recommendation. As both cases arise out of the same events, they are consolidated for the purposes of this Report and Recommendation.

[2] A steamfitter "performs work relating to installing, maintaining and repairing piping, controls, and equipment for heating systems, compressed air systems, refrigerating systems, air conditioning systems, steam and hot water systems, fire suppression systems, cooling systems and sprinkler systems." See document 152, docket number 07 CV 0731, Declaration in Support of Motion for Summary Judgment ("City Decl.") at Exhibit K.

from June 30, 1999 until his employment was terminated on November 7, 2005. See document 149,

docket number 07 CV 0731, City Defendants' Statement Pursuant to Local Rule 56.1 ("City's 56.1

Statement"), ¶2.[3] As a steamfitter employed by an agency of the City of New York, plaintiff was a

member of Steamfitters Local 638 ("Local 638"). See document 1, docket number 07 CV 0731,

Complaint, ¶¶22, 24. Local 638 is the exclusive, certified representative of steamfitters employed

by the City of New York. See document 145, docket number 07 CV 0731, Union Defendants'

Statement Pursuant to Local Rule 56.1 ("Union's 56.1 Statement"), ¶6. Though represented by the

union, steamfitters within Local 638 do not have a collective bargaining agreement with the City.

City's 56.1 Statement, ¶3. Rather, the wages and benefits of Local 638 members employed by the

City of New York are set by a Consent Determination. City Decl. at Exhibit S.

Over the course of his employment at the NYPD, plaintiff was brought up on disciplinary

charges on several occasions. Complaint, ¶30; City Decl. at Exhibits D, G. As a unionized public

employee, plaintiff was advised that he had the ability to challenge disciplinary charges either

through a four-step grievance procedure or a hearing under Section 75 of the New York Civil Service

Law ("Section 75"). Complaint, ¶24. On each occasion that disciplinary charges were brought

against plaintiff, plaintiff waived his right to a hearing under Section 75 and sought to grieve the

---

[3] Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1") requires a party moving for summary judgment to submit "a separate, short and concise statement" of the allegedly undisputed material facts, set out in numbered paragraphs, on which the moving party relies in arguing that there is no genuine issue to be tried. See Local Rule 56.1(a); see also Gianullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003); Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 72 (2d Cir. 2001). Plaintiff did not file a counter-statement under Rule 56.1(b) controverting the facts in defendants' 56.1 statements. As such, the Court may deem the facts in defendants' Rule 56.1 statements admitted. See Local Rule 56.1(c). However, the Court may not rely solely on the statement of undisputed facts contained in the Rule 56.1 statement: "[i]t must be satisfied that the citation to the evidence in the record supports the assertion." Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004); see Gianullo, 322 F.3d at 143 n.5. Therefore, the Court deems admitted only those facts in defendants' Rule 56.1 statements that are supported by admissible evidence and not controverted by the record.

charges through the four-step grievance process. Complaint, ¶39; City Decl. at Exhibit L, p. 2, 4.

On July 11, 2002, March 26, 2003, and July 14, 2003 plaintiff was served with Specifications and Charges ("First Set of Charges"). City's 56.1 Statement, ¶4. The charges accused plaintiff of the following: touching an eight year-old child in a sexual manner; screaming at a NYPD lieutenant; failing to work over a five hour period; failing to notify his supervisor that he was unable to perform his duties; and failing to be at his assigned post performing his duties. City Decl. at Exhibit D. The First Set of Charges were adjudicated at a Step II disciplinary hearing on November 1, 2004 in front of hearing officer Lieutenant Patricia Feeley. City Decl. at Exhibit E. Plaintiff was represented by his union representative, Charles Krass. Id. The hearing officer dismissed the Specification and Charge relating to the accusation of sexual abuse. Id. The other Specifications and Charges were sustained and plaintiff was ordered suspended for thirty days. Id. Plaintiff requested a Step III review of his suspension. City's 56.1 Statement, ¶9. A Step III conference was held on January 31, 2005 and Local 638 shop steward Thomas Incantalupo represented plaintiff. Id. at ¶10. The Step III hearing officer upheld the Step II decision and plaintiff's thirty day suspension. Id. at ¶11. By letter dated March 21, 2005 Local 639 President John Torpey informed plaintiff that "[t]he Union will not proceed to arbitration regarding the five (5) charges upheld by the Step III Decision because there appears to be merit to the charges, you provide no credible evidence to refute the charges, and, previously you agreed to accept a thirty (30) day suspension." See document 145, docket number 07 CV 0731, Affirmation of Richard S. Brook with Exhibits in Support of the Union Defendants' Motion for Summary Judgment ("Union Affirm.") at Exhibit 14. Nonetheless, on April 22, 2005 plaintiff appealed the Step III decision and requested arbitration of the thirty day suspension. Id. The arbitration request form filed with the Office of Collective Bargaining noted that "Local 638 has

4

been requested by Mr. D'Onofrio to allow him to pursue Step IV arbitration on his own: he will provide his own attorney and Local 638 has no responsibility for this arbitration." Id.

On July 20, 2004, January 24, 2005, March 24, 2005, and April 29, 2005, plaintiff was once again served with Specifications and Charges ("Second Set of Charges"). City's 56.1 Statement, ¶12. The charges accused plaintiff of the following: sleeping on duty; failing to comply with an order to return home for his Department Identification; failing to notify his supervisor of the loss/theft of his Department Identification; failing to follow directions on a piping installation; sleeping on duty; driving a Department vehicle the wrong way on a one-way street; failing to sign a required form; arriving fifteen minutes late for duty; parking his private vehicle in a prohibited location; failing to promptly proceed to his assignment; failing to address a leak as directed; and failing to change old valves on a radiator. City Decl. at Exhibit G. The Second Set of Charges were adjudicated at a Step II hearing on September 26, 2005 in front of Lieutenant Feeley. Id. Plaintiff was represented by Incantalupo at the hearing. Id. Lieutenant Feeley found that all charges were substantiated and terminated plaintiff's employment. Id. On plaintiff's behalf, Local 638 requested a Step III review of plaintiff's termination and a Step III hearing was held on December 5, 2005. City Decl. at Exhibit I. The Step III hearing officer upheld the Step II decision and the termination of plaintiff's employment. Id. ¶19.

On January 17, 2006 plaintiff appealed the Step III decision and requested arbitration. City's 56.1 Statement, ¶20. The request was docketed by the Office of Collective Bargaining. Id. at ¶22. Local 638 did not seek arbitration of the matter. Id. The request form was signed by both plaintiff and Krass, and specifically stated that "[g]rievant, Robert D'Onofrio asked Local 638 to file this Request For Arbitration, and he agreed to represent himself (or provide his own attorney) and Local

638 has no responsibility for this arbitration." Union's 56.1 Statement, ¶22.

Plaintiff claims that Local 638 failed to adequately represent him throughout the grievance process and declined to arbitrate on his behalf because in 2004 he filed a whistleblower complaint against fellow union members at the NYPD.[4] Complaint, ¶31-37; Union Affirm. at Exhibit 12, p. 4 - 6. On February 27, 2006 plaintiff filed an Improper Practice Petition against Local 638 with the Office of Collective Bargaining. Union's 56.1 Statement, ¶23. The Office of Collective Bargaining found that Local 638 did not breach its duty of fair representation when it refused to arbitrate plaintiff's termination. Id. at ¶26.

On August 29, 2006 the City of New York, through the Office of Labor Relations, submitted a petition to the Office of Collective Bargaining challenging the arbitrability of plaintiff's grievance. City's 56.1 Statement, ¶23. Despite its use of the four step grievance process to discipline plaintiff, the City challenged plaintiff's ability to arbitrate based on the grounds that no collective bargaining agreement existed between the City and Local 638 and thus, there was no agreement to arbitrate disciplinary matters. Id.; Complaint, ¶¶48-50.[5] Plaintiff filed another Improper Practice Petition against Local 638 with the Office of Collective Bargaining on October 19, 2006, alleging the union

---

[4] Plaintiff tape-recorded conversations with fellow steamfitters and informed the Internal Affairs Bureau at the NYPD that steamfitters had stolen copper and brass piping from the Department and sold it at a scrap yard. Union Affirm. at Exhibit 12. The Office of the Deputy Commissioner of Management and Budget ("OMB") investigated plaintiff's complaint of stolen Department property. Id. Plaintiff was deposed regarding the incident. Plaintiff requested union representation at the deposition and Local 638 allowed Incantalupo to represent him, despite the fact that plaintiff's allegations implicated Incantalupo. Id. On September 6, 2004, following the investigation, OMB concluded that plaintiff's complaint regarding stolen Department property was unfounded. Id.

[5] Plaintiff alleges that the arbitration process was approved by both the Union and Department's "hierarchy." He states: "[h]ow could all these 'labor experts' not know that the Arbitration Process is not - allegedly - a contractual item? No person or person who profess to be labor experts, and negotiated a contract for Steamfitters, could be so stupid as not to know what contractual obligations exist or don't exist. One would have to logically conclude that their collective actions were willfully misleading so as to cause harm and injury to the Plaintiff." Complaint, ¶50 (emphasis in original).

breached its duty of fair representation by not contesting the City's challenge to arbitrability. Union's 56.1 Statement, ¶28. The Office of Collective Bargaining denied plaintiff's petition and found that Local 638 did not breach its duty of fair representation. Id. at ¶30. On February 26, 2007, the Board of Collective Bargaining, part of the Office of Collective Bargaining, rejected the City's challenge based on the equitable doctrine of laches and directed that the matter be arbitrated. City Decl. at Exhibit L. Because Local 638 declined to arbitrate on plaintiff's behalf, plaintiff retained private counsel for the arbitration. Union Affirm. at Exhibit 8.

At the arbitration, plaintiff argued that "he was improperly treated by the Department as the result of an arrest due to an alleged child molestation incident in July 2002." City Decl. at Exhibit M, pg. 32. On November 28, 2008 Arbitrator Joan Ilivicky issued an order on both the First and Second Set of Charges. City's 56.1 Statement, ¶25. The arbitrator found that plaintiff's conduct constituted "no more than minor infractions and in no way affected or created justification for two suspensions each having a duration of thirty (30) days and assuredly no justification for termination." City Decl. at Exhibit M, p. 46. The arbitrator agreed that "the motivation behind the Department's vindictive treatment of [plaintiff] was due to the charge of child abuse." Id. The arbitrator did not order an award at the time of her decision. The parties had agreed that the arbitrator "would limit her rulings to the rendering of an Opinion with reference to the innocence or guilt of Grievant and an Award would be issued at a later date after the initial determination had been rendered." Id. at 1. On June 4, 2010 the arbitrator awarded plaintiff reinstatement as well as lost wages and benefits.[6]

---

[6] The arbitration award was issued after defendants' motions for summary judgment were fully briefed. Plaintiff has since filed a copy of the arbitrator's award with the Court. See document 156, docket number 07 CV 0731. Although the instant actions do not include any claim to enforce the arbitration award, nothing herein shall preclude plaintiff from enforcing the award against the City of New York. Plaintiff has made clear at Court conferences that he intends to enforce the arbitration award, as is his right. As plaintiff was represented in the arbitration hearing, he should seek the legal advice of counsel as to when and where to bring the enforcement action

## PROCEDURAL HISTORY

Plaintiff filed his complaint in 07 CV 0731 on February 21, 2007 against the City of New York, the New York City Police Department, the NYC Office of Labor Relations, Patricia Feeley, the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada ("International Union"), Steamfitters' Union Local 638, Thomas Incantalupo, John Torpey, Robert Bartels, and Charles Krass. See document 1, docket number 07 CV 0731. The International Union moved to dismiss and the Court granted defendant's motion. See documents 23, 29, docket number 07 CV 0731. All other defendants answered the complaint. See documents 18, 19, 51, docket number 07 CV 0731. In light of the ongoing arbitration, the Court stayed the action. See document 27, docket number 07 CV 0731. After the arbitrator's initial decision, the Court lifted the stay and the parties conducted discovery.

While 07 CV 0731 was pending, plaintiff filed a notice of claim against Local 638 in the Civil Court of the City of New York, Kings County. See document 1, docket number 09 CV 3970. On September 16, 2009, Local 638 removed the case to federal court, asserting federal question jurisdiction. Id. Local 638 answered the complaint and filed a counterclaim against plaintiff seeking sanctions and an injunction to prohibit plaintiff from bringing additional frivolous actions against the union. See document 4, docket number 09 CV 3970. Plaintiff moved to remand the action pursuant to 28 U.S.C. § 1447. See document 5, docket number 09 CV 3970. The Court denied plaintiff's motion to remand and instructed plaintiff to file an amended complaint detailing the facts and circumstances giving rise to his claim. See document 11, docket number 09 CV 3970. Plaintiff

---

should the City fail to honor the award. That being said, the arbitrator reinstated plaintiff to his position and awarded him backpay in June; the Court urges the parties to resolve this matter once and for all, rather than resorting to further litigation.

filed an amended complaint alleging that Local 638 breached its contract with plaintiff by failing to provide plaintiff with overtime earning statements he had requested prior to the arbitration hearing on July 10, 2009. See document 13, docket number 09 CV 3970. As a result, the arbitration hearing was continued until August 28, 2009 and plaintiff incurred $2,000 in additional legal expenses. Local 638 answered the amended complaint and re-asserted its counterclaims against plaintiff. See document 15, docket number 09 CV 3970.

Defendants now move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[7] Plaintiff opposes the motions and defendants have replied.[8]

## DISCUSSION

### I. Standard of Review

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if it is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (quoting Anderson, 477 U.S. at 248 ); see also Celotex

---

[7] Defendants provided plaintiff the requisite notice under Local Civil Rule 56.2. See document 145, docket number 07 CV 0731; document 150, docket number 07 CV 0731; document 25, docket number 09 CV 3970.

[8] Defendants argue that plaintiff's opposition fails to address the arguments raised in the City's motion for summary judgment and therefore the Court should deem the plaintiff's claims abandoned. The Court disagrees, as a party opposing summary judgment need not submit *any* response to the motion. See Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001) (Where the non-moving party "chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.").

Corp. v. Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000); see also Baker v. The Home Depot , 445 F.3d 541, 543 (2d Cir. 2006) (resolving all ambiguities and drawing all inferences in favor of the nonmoving party on summary judgment). For the purposes of defendants' motions for summary judgment, the facts here are viewed in the light most favorable to plaintiff.

"[A]n opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); see Matsushita, 475 U.S. at 586-87. In other words, the non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor. Anderson, 477 U.S. at 257. "Conclusory allegations, conjecture, and speculation … are insufficient to create a genuine issue of fact." Niagra Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998)). Moreover, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." Id. (quoting Anderson, 477 U.S. at 252). Finally, the Court must construe a *pro se* plaintiff's complaint liberally and interpret it "to raise the strongest arguments that [it] suggest[s]." Harris v. City of New York, 607 F.3d 18, 24 (2d Cir. 2010) (internal quotation marks omitted).

## II. Procedural Due Process Claim Under 42 U.S.C. § 1983

Plaintiff claims that defendants denied him due process of law under the Fourteenth

10

Amendment. "In order to prevail on a Section 1983 claim for violation of the procedural due process rights guaranteed by the Fourteenth Amendment, the plaintiff must show (1) that he possessed a protected liberty or property interest; and (2) that he was deprived of that interest without due process." Jackson v. Roslyn Bd. of Educ., 652 F. Supp. 2d 332, 338 (E.D.N.Y. 2009) (citing McMenemy v. City of Rochester, 241 F.3d 279, 285-86 (2d Cir. 2001)).

Property interests are not created by the Constitution, but rather "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law - rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972). To have a property interest in his employment, an employee must have had "a legitimate claim of entitlement to it." Id. "A public employee has a property interest in continued employment if the employee is guaranteed continued employment absent 'just cause' for discharge." Ciambriello v. County of Nassau, 292 F.3d 307, 313 (2d Cir. 2002). Such a guarantee may be created by a collective bargaining agreement or by statute. Id. The record in this case makes clear that no collective bargaining agreement exists between the City of New York and Local 638. However, the parties do not dispute that plaintiff was covered by Section 75 of the New York Civil Service Law. Section 75 states that a covered employee "shall not be removed or otherwise subjected to any disciplinary penalty provided in this section except for incompetency or misconduct shown after a hearing upon stated charges pursuant to this section." N.Y. Civ. Serv. L. § 75(1). Indeed, the Second Circuit has recognized that public employees in New York covered by Section 75 have a property interest in their employment that is protected by the Fourteenth Amendment. Ciambriello, 292 F.3d at 314.

As plaintiff had a constitutionally protected property interest in his continued employment with the City of New York, the Court now turns to the question of whether plaintiff received all the process he was due. Where the government terminates the employment of a tenured public employee, "procedural due process is satisfied if the government provides notice and a limited opportunity to be heard prior to termination, so long as a full adversarial hearing is provided afterwards." Locurto v. Safir, 264 F.3d 154, 171 (2d Cir. 2001) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 545-46 (1985)).

### A. Pre-Deprivation Process

Plaintiff argues that he was denied due process when he was suspended and then terminated without a pre-deprivation hearing held pursuant to Section 75 of the New York Civil Service Law. Although the government must provide notice and a hearing prior to termination, "the requisite hearing is a minimal one." Locurto, 264 F.3d at 173. The Supreme Court has stated that prior to discipline "[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Loudermill, 470 U.S. at 546. In New York, a Section 75 hearing generally satisfies the pre-deprivation hearing requirement of due process for public employees covered by the statute. See Longo v. Suffolk County Police Dep't, 429 F. Supp. 2d 553, 559 (E.D.N.Y. 2006) ("[T]he combination Section 75 and [Article] 78 provide a terminated public employee with remedies that are consistent with the requirements of the due process clause of the Constitution.").

However, due process does not require a Section 75 hearing where the covered public employee is unionized and the employee, or the union on the employee's behalf, waives the right to

a Section 75 hearing in favor of grievance procedures created by a collective bargaining agreement. See Morris v. Lindau, 196 F.3d 102, 115 (2d Cir. 1999) (disciplinary provision in collective bargaining agreement stating it was "in lieu of" Section 75 provision waived Section 75 rights); see also Hubbard v. Hanley, No. 09 Civ. 10265, 2010 U.S. Dist. LEXIS 46550, at *13 (S.D.N.Y. May 12, 2010) (public employee executed waiver of rights under Section 75 in favor of grievance procedure established by collective bargaining agreement). Even where the right to a Section 75 hearing is waived in favor of grievance procedures created by a collective bargaining agreement, the grievance procedures must provide sufficient procedural rights. See Ciambriello, 292 F.3d at 322, n.7 ("The fact that collective bargaining agreements might, in some circumstances, provide all the process that union members are due obviously does not compel the conclusion that the CBA at issue here provided all the process that Ciambriello was due.").

The instant record reflects that plaintiff voluntarily waived his rights under Section 75 in favor of an alternative four-step grievance process.[9] Although the record does not include the signed waiver forms, plaintiff concedes that he in fact waived his rights under Section 75.[10] Plaintiff argues only that he relied upon the advice of his representatives from Local 638 when he waived his rights. Complaint, ¶39. Upon a valid waiver of Section 75 rights, due process does not require that a

---

[9] The record does not reflect that plaintiff waived his constitutional rights to due process by electing to proceed with the four-step grievance process. Indeed, defendants do not contend that he did so. Rather, plaintiff only waived his statutory right to a hearing under Section 75. See Ciambriello, 292 F.3d at 321-22 (discussing union members' waiver of statutory rights in collective bargaining agreement, but not constitutional rights).

[10] Plaintiff states in his complaint that he had "three (3) separate and distinct sets of specifications and charges... [and] relying upon the expertise and judgment of Messer's, Torpey, Bartels, Krass, and Incantalupo, [plaintiff] agreed to the Four (4) Step Arbitration Process and waived his rights under New York Civil Service Law Section 75." Complaint, ¶39. The facts summarized in the Board of Collective Bargaining's decision from February 26, 2007 also state that plaintiff "elected to exercise his alleged right to grievance proceedings pursuant to Administrative Guide 319-19." City Decl. at Exhibit L, p. 2, 4.

Section 75 hearing be held for a tenured public employee in New York. The grievance procedures that plaintiff elected included a Step II hearing prior to suspension and termination. Defendant Feeley presided over a Step II hearing on November 1, 2004 and September 26, 2005. Prior to these hearings, plaintiff was provided with formal written notice of the charges brought against him, including a description of each of the underlying incidents. At the Step II hearings, plaintiff had the opportunity to present his side of the story. Indeed, the Step II decisions from November 1, 2004 and September 26, 2005 state that plaintiff testified at the hearings. City Decl. at Exhibits E, H. Plaintiff argues that the Step II hearings violated due process because defendant Feeley did not allow plaintiff to tape record the hearing, bring any witnesses, or cross-examine the City's witnesses. However, notice and a minimal hearing satisfy due process prior to termination, so long as a full adversarial hearing is provided afterwards. Even though the Step II hearings were not held pursuant to a collective bargaining agreement, as such an agreement did not exist between Local 638 and the City of New York, the hearings provided plaintiff with notice and a limited opportunity to be heard prior to his suspension and termination. See Hubbard, No. 09 Civ. 10265, 2010 U.S. Dist. LEXIS 46550, at *13-14 (finding that Step II hearing provided to a unionized employee of the City of New York was "adequate process" because "the law requires little more than notice and an opportunity to be heard"). This was sufficient to satisfy due process.

**B. Post-Deprivation Process**

Plaintiff also argues that he was deprived of due process when he was suspended and then terminated without a post-deprivation arbitration hearing. Complaint, ¶57. Due process requires that a terminated tenured public employee be afforded the right to "a full adversarial hearing before a neutral adjudicator." Longo, 429 F. Supp. 2d at 559 (citing Locurto, 264 F.3d at 173). The record

shows that at the time plaintiff initiated this action, the City of New York had denied plaintiff the opportunity to proceed to arbitration and receive a full adversarial hearing through the grievance process. The City challenged plaintiff's ability to arbitrate his suspension or termination, arguing that plaintiff had no right to arbitrate disciplinary actions because no collective bargaining agreement existed providing such a right. Plaintiff thus found himself in the difficult and understandably frustrating position where, according to the City, his only recourse was a civil service hearing under Section 75 – a process that plaintiff had previously waived so that he could arbitrate the disciplinary charges.

However, while plaintiff's case under 07 CV 0731 was pending, the Board of Collective Bargaining rejected the City's challenge to plaintiff's ability to arbitrate. Consequently, plaintiff brought all disciplinary charges against him to arbitration and the arbitrator's decision was in his favor. The arbitrator found that plaintiff's suspension and termination by the NYPD were unwarranted, and awarded plaintiff reinstatement and lost wages.[11] In light of the fact that plaintiff arbitrated the disciplinary charges that resulted in his suspension and termination, plaintiff's claim that he was denied arbitration, and thus an adequate post-deprivation process, is now moot. Having been provided a full adversarial arbitration hearing by a neutral adjudicator, plaintiff received the post-deprivation process he was due.[12]

---

[11] At the conclusion of her opinion, the arbitrator noted "[i]t is difficult to comprehend that the Department herein, had the luxury of expending so much manpower and energy to invalidate the credibility of a single employee who Grogan readily conceded, had the ability and workmanship required to perform his responsibilities." City Decl. at Exhibit M, p. 45.

[12] Not only did the arbitration provide plaintiff with the post-deprivation *process* he was due, but also it provided plaintiff with much of the *relief* he seeks in his complaint. Plaintiff's complaint in 07 CV 0731 requests that the Court "[m]ak[e] the Plaintiff whole again; that is, returning the Plaintiff to his former position of Steamfitter and reimbursing Plaintiff for lost wages, benefits, annuity wages, vacation time, sick leave time and holiday wages from November 7, 2005 to the present."

Even if plaintiff had not been provided with an arbitration hearing herein, plaintiff "had available an entirely adequate further remedy in the form of a New York State Article 78 proceeding." Segal v. City of New York, 368 F. Supp. 2d 360, 363 (S.D.N.Y. 2005). As long as a public employee has the *opportunity* to challenge his termination in an Article 78 proceeding, the post-deprivation requirement of due process is satisfied. Longo, 429 F. Supp. 2d at 559 ("[I]t matters not whether a plaintiff actually avails himself of the state court post-deprivation process."). Plaintiff could have brought an Article 78 proceeding to challenge the City's termination of his employment and therefore, due process would have been satisfied even if plaintiff had been unable to arbitrate his termination.

In conclusion, plaintiff's due process claim under 42 U.S.C. § 1983 cannot withstand defendants' motions for summary judgment as plaintiff received adequate pre-deprivation process through the Step II hearings, a full adversarial post-deprivation hearing through the arbitration, and the opportunity to challenge his suspension and termination in an Article 78 proceeding. Therefore, defendants' motions for summary judgment should be granted as to plaintiff's procedural due process claim.[13]

---

[13] As the Court finds that plaintiff's constitutional rights were not violated, the Court need not reach the issue of whether defendant Feeley is entitled to qualified immunity. See Walczyk v. Rio, 496 F.3d 139, 154 (2d Cir. 2007) (If a government official's conduct violates no constitutional right, "there is no necessity for further inquiries concerning qualified immunity."). Furthermore, plaintiff cannot sustain his municipal liability claim against the City of New York under Monell v. Dept. of Soc. Servs., 436 U.S. 658, 690-91 (1978). Even if plaintiff had established that the City had officially adopted a policy, practice, or custom, which he did not, plaintiff could not show that the policy, practice, or custom resulted in a deprivation of his constitutional rights.

Plaintiff's claim against a number of the named defendants fails for additional reasons. First, to the extent that plaintiff asserts a procedural due process claim against the union defendants, this claim fails because plaintiff has not shown that Local 638 or the union's agents and officers named in this action are state actors within the meaning of 42 U.S.C. § 1983. Labor unions generally are not state actors. Ciambriello, 292 F.3d at 323. For a private party to be held liable under 42 U.S.C. § 1983, plaintiff must show that the "private party [was] acting under color of state law." Id. Plaintiff fails to show that the union defendants were acting under the color of state law when disciplinary charges were brought against him. See Perry v. Metro. Suburban Bus Auth., 390 F. Supp. 2d 251, 262

### III. Conspiracy Under 42 U.S.C. § 1983

Plaintiff alleges that the officers and agents of Local 638, Lieutenant Feeley and the NYPD conspired to deprive him of his constitutional rights.[14] To maintain a claim for conspiracy under 42 U.S.C. § 1983, plaintiff must show: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Ciambriello, 292 F.3d at 324-25.

Plaintiff's conspiracy claim under 42 U.S.C. § 1983 fails because plaintiff has not demonstrated that an agreement existed between any state actor at the NYPD or Office of Labor Relations and any agent or officer of Local 638 to violate his constitutional rights. In his voluminous submissions in opposition to defendants' motions, plaintiff only makes conclusory assertions that a conspiracy existed. When asked about the conspiracy at his deposition, plaintiff offered the following response:

> Q: Do you believe that Lieutenant Feely had any kind of secret meeting with Bartels, Krass, or Incantalupo to violate your civil rights?
>
> A: Be it omission or commission, that's what I believe. She did nothing and the union did nothing to pursue it.
>
> Q: That's what you believe was a conspiracy?
>
> A: That's what I would call it. I was denied my day in Court.

---

(E.D.N.Y. 2005) (finding that labor union was not subject to Section 1983 liability as a matter of law). Second, to the extent that plaintiff asserts a procedural due process claim against the New York City Police Department and the New York City Office of Labor Relations, these City agencies are not suable entities under 42 U.S.C. § 1983. See, e.g., Adams v. Galletta, 966 F. Supp. 210, 212 (S.D.N.Y. 1997) (dismissing City agency from plaintiff's Section 1983 suit).

[14] Plaintiff's complaint purports to assert a conspiracy claim under 42 U.S.C. § 1981, 1983, and 1985. Complaint, ¶75. Plaintiff fails to state a conspiracy claim under Sections 1981 or 1985 because such claims require an allegation that the conspiracy was motivated by race or other invidious class-based animus. See Brown v. City of New Oneonta, New York, 221 F.3d 329, 341 (2d Cir. 2000). Plaintiff makes no such allegation here.

City Decl. at Exhibit B, p. 52. Defendants Torpey, Krass, and Incantalupo all deny conspiring with the NYPD to terminate plaintiff's employment. Union Affirm. at Exhibit 25. Liberally interpreting plaintiff's supporting papers, as I must, plaintiff argues that an agreement to terminate plaintiff's employment without due process can be inferred from the following facts: Local 638 advised plaintiff to waive his right to a Section 75 hearing; the City terminated plaintiff's employment following the Step II of the grievance process; Local 638 did not contest the City's challenge to the arbitrability of plaintiff's grievance; Local 638 declined to represent plaintiff in the arbitration hearing; and the arbitrator found the suspension and termination of plaintiff unwarranted. However, plaintiff fails to raise a genuine issue of material fact regarding the existence of a conspiratorial agreement. See Jean-Laurent v. Wilkinson, 540 F. Supp. 2d 501, 508 (S.D.N.Y. 2008) (plaintiff's "conclusory assertions of a conspiratorial agreement" could not withstand summary judgment); see also Ciambriello, 292 F.3d at 325 ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct."). As plaintiff does not establish the existence of any agreement between defendants or show facts from which a reasonable jury could infer such an agreement, defendants' motions for summary judgment should be granted on plaintiff's conspiracy claim under 42 U.S.C. § 1983.

**IV. Abuse of Process Under 42 U.S.C. § 1983**

Plaintiff asserts that defendants violated his constitutional rights under 42 U.S.C. § 1983 when they abused the administrative grievance process for adjudicating disciplinary charges. However, plaintiff's claim fails because a claim for malicious abuse of *civil* process is not cognizable

under 42 U.S.C. § 1983. Green v. Mattingly, 585 F.3d 97, 104 (2d Cir. 2009) (citing Spear v. West Hartford, 954 F.2d 63, 68 (2d Cir. 1992), cert. denied, 113 S. Ct. 66 (1992)). The Second Circuit only recognizes claims for malicious abuse of *criminal* process under 42 U.S.C. § 1983. See Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994) (noting that "[t]he distinction between civil and criminal abuse of process is critical for section 1983 purposes"). Plaintiff raises a claim for abuse of civil, not criminal, process. As liability under 42 U.S.C. § 1983 "may not be predicated on a claim for malicious abuse of [civil] process," defendants' motions for summary judgment should be granted on this claim. Spear, 954 F.2d at 68.

## V. Breach of the Duty of Fair Representation

Plaintiff claims that Local 638 breached its duty of fair representation when it declined to arbitrate plaintiff's disciplinary charges, advised him to waive his rights under Section 75 of the New York Civil Service Law, and failed to contest the City's challenge to the arbitrability of plaintiff's grievances. The record shows that after providing representation to plaintiff in various lower level disciplinary hearings, Local 638 decided not to seek arbitration on plaintiff's suspension and termination. From the face of plaintiff's complaint and opposition papers, it is unclear if plaintiff seeks to bring his duty of fair representation claim under federal or state law.[15]

To the extent that plaintiff asserts that Local 638 breached its duty of fair representation under federal law, plaintiff's claim cannot survive defendants' instant motion for summary judgment. The federal duty of fair representation is inferred from Section 9(a) of the NLRA, which grants

---

[15] Plaintiff's complaint in 07 CV 0731 asserts this Court's jurisdiction under 29 U.S.C. § 185 (the Labor Management Relations Act). However, plaintiff only refers to New York State law under his fourth cause of action alleging a breach of the duty of fair representation.

unions the exclusive right to bargain for all members of a designated unit. See Vaca v. Sipes, 386 U.S. 171, 177 (1967). However, the NLRA excludes "any state or political subdivision thereof" from the definition of "employer." 29 U.S.C. § 152(2). As a result, courts have held that state and city employees cannot maintain a cause of action against their union for breach of the duty of fair representation under federal law.[16] See e.g., Straker, 333 F. Supp. 2d at 104 (employee of the New York City Transit Authority lacks a "cognizable federal claim" against the union for breach of the duty of fair representation); Muhlrad v. Mitchell, 96-CV-3568, 1997 U.S. Dist. LEXIS 4683 at *11 (S.D.N.Y. April 14, 1997) (plaintiffs, as employees of the New York City Health and Hospitals Corporation, "cannot maintain a cause of action against the Union based on the federal duty of fair representation"). Plaintiff contends that Local 638 owes him a duty of fair representation under federal law because the union represents both private and public employees. Complaint, ¶51. Even though Local 638 represents both private and public employees, plaintiff is considered a public employee as he is employed by the NYPD, an agency of the City of New York, and therefore, he cannot bring a claim for breach of the federal duty of fair representation. Accordingly, defendants' motion for summary judgment should be granted on plaintiff's federal duty of fair representation

---

[16] A claim against a union for breach of the fair duty of representation may also be brought as a "hybrid" claim under Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. In a "hybrid" claim, "the employee sues an employer under Section 301(a) for violating a collective bargaining agreement, and sues a union for breach of the duty of fair representation based on the failure of the union to pursue a grievance on behalf of the employee against the employer." Cunningham v. Local 30, Int'l Union of Operating Eng'rs, 234 F. Supp. 2d 383, 395 (S.D.N.Y. 2002). Because the NLRA's definitions of "employer" and "employee" apply to the LMRA, see 29 U.S.C. § 142(3), courts have held that "[t]he LMRA ... does not vest federal district courts with subject matter jurisdiction over claims by public employees against their unions for breach of the duty of fair representation." Straker v. Metro. Transit Auth., 333 F. Supp. 2d 91, 104 (E.D.N.Y. 2004). In this case, because no collective bargaining agreement existed between Local 638 and the City of New York, plaintiff could not sue his employer for violating a collective bargaining agreement as part of a "hybrid" claim under the LMRA.

claim against Local 638.[17]

To the extent that plaintiff claims in 07 CV 0731 that Local 638 breached its duty of fair representation under the laws of the State of New York, this claim should also be dismissed. This Court has jurisdiction over plaintiff's state law duty of fair representation claim in 07 CV 0731 under 28 U.S.C. § 1367. Although the Court recommends that all of plaintiff's federal claims should be dismissed, the Court should exercise supplemental jurisdiction over this claim in the interest of judicial economy, convenience, and fairness.[18]

The Taylor Law, N.Y. Civ. Serv. L. § 209-a(2), provides public employees in New York a cause of action for breach of the duty of fair representation.[19] The statute of limitations on a claim

---

[17] To the extent that plaintiff claims that defendants Torpey, Bartels, Krass, and Incantalupo, as officers and employees of Local 638, each individually breached their duty of fair representation to plaintiff, such a claim cannot withstand defendants' motion for summary judgment. Even if plaintiff could maintain a cause of action under the federal duty of fair representation, it is well-settled that "[u]nion officers and employees are not individually liable for acts performed as representatives of the union." Morris v. Local 819, International Bhd. of Teamsters, 954 F. Supp. 573, 581 (E.D.N.Y. 1997) (dismissing claim for breach of the duty of fair representation against union trustee).

[18] 28 U.S.C. § 1367(c)(3) provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." The Second Circuit has noted that "scope of the district court's discretion, however, is not boundless." Valencia v. Sung M. Lee, 316 F.3d 299, 305 (2d Cir. 2003). In fact, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Id. (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 349-50 (1988)). However, in this case, judicial economy, convenience, and fairness militate towards the exercise of supplemental jurisdiction over plaintiff's state law duty of fair representation claim. See e.g., Drake v. Lab. Corp. of America Holdings, 323 F. Supp. 2d 449, 454-55 (E.D.N.Y. 2004) (retaining supplemental jurisdiction over state law claims after federal claims were dismissed). Declining to exercise supplemental jurisdiction over this state law claim would further delay the resolution of this case and may unnecessarily burden the state court system with a new action which would be time-barred.

[19] Plaintiff's fourth cause of action in 07 CV 0731, which asserts his duty of fair representation claim, does not cite to the Taylor Law. Instead, plaintiff cites to Section 75 of the New York Civil Service Law and Section 220 of the New York Labor Law. However, Section 75 lacks a private right of action for damages, and federal courts lack supplemental jurisdiction over prevailing wage claims under Section 220. See Brown v. Tomcat Elec. Sec., Inc., No. 03-CV-5175, 2007 U.S. Dist. LEXIS 63542, at *8-9 (E.D.N.Y. Aug. 27, 2007) ("[P]revailing wage claims . . . do not fall within the Court's supplemental jurisdiction.").

under the Taylor Law is four months. N.Y. C.P.L.R. § 217(2)(a). Plaintiff filed his complaint in 07 CV 0731 on February 21, 2007, alleging that Local 638 breached its duty of fair representation when it declined to arbitrate plaintiff's disciplinary matters, advised him to waive his rights under Section 75, and failed to contest the City's challenge to the arbitrability of plaintiff's grievance. Any claim for breach of the duty of fair representation under the Taylor Law that plaintiff might have had against Local 638 based on these allegations accrued prior to October 21, 2006 and thus, is time-barred. Local 638 declined to arbitrate plaintiff's suspension and termination on April 22, 2005 and January 17, 2006. Any advice regarding the waiver of Section 75 rights occurred prior to the Step II hearings on November 1, 2004 and September 26, 2005. Finally, the record demonstrates that Local 638 declined to contest the City's challenge to the arbitrability of plaintiff's grievance before October 19, 2006.[20] As plaintiff's claim under the Taylor Law is time-barred, defendants' motion for summary judgment should be granted on plaintiff's state law duty of fair representation claim in 07 CV 0731.

Plaintiff's amended complaint in 09 CV 3970 does not clearly allege the claim it seeks to raise or the date the claim arose. The Court construes plaintiff's allegations in 09 CV 3970 regarding Local 638's failure to provide him the overtime earnings statements of other union members as raising a duty of fair representation claim.[21] As a public employee cannot maintain a federal claim

---

[20] The City submitted its petition challenging the arbitrability of plaintiff's grievance on August 29, 2006. On October 19, 2006 plaintiff filed an Improper Practice Petition against Local 638 with the Office of Collective Bargaining based on the union's decision not to contest the City's petition.

[21] In the amended complaint, plaintiff alleges the following: "a valid contract / agreement exists between D'Onofrio and Steamfitters' Local 638;" "[t]he Union was / is obligated to provide the documentation the Plaintiff required for his defense in the Arbitration Process;" "[t]he Union constantly refuses to do a thing on my behalf;" and "[t]he result of the Union's lack of cooperation caused an extra expense of [$2000]." See document 13, docket number 09 CV 3970, Amended Complaint (emphasis in original). The Court construes these allegations as presenting a claim for breach of the duty of fair representation. Local 638 argues that it properly removed plaintiff's

22

for breach of the duty of fair representation, plaintiff's claim must arise under New York's Taylor Law. As such, the Court lacks subject matter jurisdiction over plaintiff's case in 09 CV 3970. See Ford v. D.C. 37 Union Local 1549, No. 07 Civ. 1875, 2008 U.S. Dist. LEXIS 30316, at *6 (S.D.N.Y. April 10, 2008) ("[C]laims brought by employees of city agencies -- which are political subdivisions of the State -- must be dismissed for lack of subject matter jurisdiction."). In a removal action, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c); see also Valencia, 316 F.3d at 308 ("Because this case was commenced in state court, the district court should remand the action to the state court in which it was originally filed."). Although the Court denied plaintiff's motion to remand this action to state court, it was not clear at the time that no federal claim for breach of the duty of fair representation was presented. It is now apparent that this Court lacks subject matter jurisdiction over plaintiff's removal action.[22]

Accordingly, plaintiff's case in 09 CV 3970 should be remanded to the Civil Court of the City of New York, Kings County. As the Court lacks subject matter jurisdiction, the Court should not consider Local 638's counterclaim or motion for sanctions and a filing injunction against plaintiff.

---

small claims action to federal court based on federal question jurisdiction arising under Section 301 of the LMRA. See document 25, docket number 09 CV 3970, Memorandum of Law In Support of Defendant's Motions For Summary Judgment ("Union Memo."), p. 7. Local 638's Notice of Removal also states that the Court has original jurisdiction over the case as plaintiff's claim arises under Section 301 of the LMRA.

[22] Local 638 argues that its removal of plaintiff's small claims action was proper in 09 CV 3970 because "Section 301 claims under the LMRA, 29 U.S.C. § 185, completely pre-empt a state cause of action based on actions purporting to enforce collective bargaining obligations." Union Memo., p. 7. The Court disagrees. As Local 638 recognized in its motion papers in 07 CV 0731, there is no federal jurisdiction under Section 301 of the LMRA over claims by public employees.

## CONCLUSION

It is respectfully recommended that defendants' motions for summary judgment in 07 CV 0731 should be granted. Plaintiff's complaint in 07 CV 0731 should be dismissed with prejudice. The Court should not reach defendant's motion for summary judgment in 09 CV 3970 and the case should be remanded to the Civil Court of the City of New York, Kings County, as the Court lacks subject matter jurisdiction over the action.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

LOIS BLOOM
United States Magistrate Judge

Dated: September 13, 2010
   Brooklyn, New York

24